In Re VALLEY CENTER DRAIN DISTRICT. JOHNSTON, Appellant, *v.* EDER et al., Respondents.

(No. 5,132.)

(Submitted October 18, 1922. Decided November 4, 1922.)

[211 Pac. 218.]

*Drainage Districts—Constitution—Eminent Domain—Due Process of Law—Jury Trial—Drain Commissioners—Method of Selection—Powers—Special Assessments not Taxes—Report of Commissioners—Effect of Order Confirming.*

Drainage Districts—Public Use—Eminent Domain.
    1.  Lands may be brought into a drainage district and subjected to the imposition of special assessments to defray the cost of constructing and maintaining the drainage system on the theory that the use

1.  What property is liable for assessment for construction of drains or sewers, see notes in Ann. Cas. 1915D, 384; 26 L. R. A. (n. s.) 973.

to which the lands are subjected is a public use, the state acting in virtue of its power of eminent domain.

Same—Creation—Due Process of Law.

2. So long as the statute authorizing the construction and maintenance of a drain and the imposition of special assessments to defray the cost thereof provides for notice to every interested land owner and an opportunity for him to be heard before he can be affected adversely, it does not deprive him of his property without due process of law.

Same—Drain Commissioners—Powers—Preliminary Investigation.

3. The fact that the drainage statute by section 7347, Revised Codes of 1921, permits the commissioners to go upon a land owner's property for the purpose of necessary investigation to determine the special benefits received or damages suffered by it, in advance of an award, does not render it obnoxious to the constitutional provision that private property shall not be taken or damaged for public use without compensation having been first made to or paid into court for the owner.

Same—Jury Trial.

4. The proceeding by which a drain district is created and managed is not an ordinary civil action but a special statutory proceeding in which the trial by jury did not exist at the time the state Constitution was adopted, and hence the constitutional right of trial by jury is not denied by failure of the statute to make the question of benefits received or damages suffered by a land owner determinable by a jury.

Same—Jury Trial—Discrimination in Favor of Owners Whose Lands Included in District After Creation.

5. Since the situation of the land owner whose property is originally included in a drainage district is so far different from that of the owner whose property is brought into the district after it is created as to furnish the basis for a reasonable classification, the drainage statute (secs. 7265–7364, Rev. Codes 1921) is not open to the objection that it discriminates in favor of the latter by extending to him the right of trial by jury of the question of benefits received or damages suffered, while the same right is denied to the former.

Same—Delegation of Legislative Power upon Judiciary—Constitution.

6. Held, that the Drainage Act does not attempt to delegate legislative power to the judiciary, and therefore does not impinge upon the provisions of section 1, Article IV, of the state Constitution, prohibiting the exercise of powers of a state department properly belonging to any other.

Same—Drain Commissioners—Who may Serve.

7. Since drainage district commissioners act only in an advisory capacity and their assessments of benefits and damages are reviewable on appeal after notice to all interested parties, the provision of section 7280, Revised Codes of 1921, that the fact that a person owns land in the proposed district shall not disqualify him from acting as commissioner, does not violate the principle that no one shall be the judge of his own cause.

---

7. Selection of disinterested persons to assess benefits from improvements, see note in 16 L. R. A. (n. s.) 292.

Qualification of owner of property affected by public improvement to act in making assessment, see note in 2 A. L. R. 1207.

Same—Method of Selection of Drain Commissioners.
   8.   In the absence of constitutional restriction, the legislature may designate the officers in charge of drainage districts and provide the method of their selection, and therefore the contention that the interested land owners should have the right to select the commissioners is without merit.

Same—Special Assessments not Taxes—Constitution.
   9.   Special assessments for the construction and maintenance of drainage works are not taxes within the meaning of section 11, Article XII, of the state Constitution, providing that taxes shall be uniform upon the same class of subjects, and hence that provision has no application.

Same—Service of Notice of Postponed Hearing—Sufficiency.
   10.   Where the bill of exceptions prepared by appellant himself recited that the notice of an adjourned hearing looking to the organization of an irrigation district had been given and served as provided by law (sec. 7273, Rev. Codes 1921), his contention that the service was defective does not merit consideration.

Same—Objections to Report of Commissioners—Effect of Order Confirming.
   11.   An order of the court confirming the report of drain commissioners as made operates *ipso facto* to overrule every objection urged in the remonstrance, and therefore assignment of error that it did not pass upon all the objections raised is without merit.

*Appeal from District Court, Big Horn County; Robert C. Stong, Judge.*

In the Matter of the location and establishment of the Valley Center Drain District, Big Horn County, Montana. From an order directing C. S. Eder and others, as Drain Commissioners, to proceed with the work of constructing the system over the protest or remonstrance of J. W. Johnston, the remonstrant appeals. Affirmed.

*Messrs. Guinn & Maddox*, for Appellant, submitted a brief; *Mr. C. C. Guinn* argued the cause orally.

*Mr. T. H. Burke*, for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On August 4, 1921, a petition in due form was presented to the district court of Big Horn county praying for the creation of the Valley Center drain district. An order was made

designating September 1 as the time for hearing the petition, but at that time it appeared that all interested persons had not been served with notice, and the hearing was postponed until September 19 and further notice given. The hearing on September 19 resulted in an order establishing the district and appointing three commissioners to serve until the first Tuesday of July, 1923. The commissioners duly qualified, and on October 18 presented their preliminary report. On October 21 an order was made designating December 1 as the time for hearing the report, and notice was given as required by law. On November 25, J. W. Johnston, an owner of land within the district, but who had not signed the original petition, filed his protest or remonstrance against the report, setting forth specifically his objections. After the hearing on December 1 an order was entered which confirmed the report, fixed the boundaries of the district, and directed the commissioners to proceed with the work of constructing the drainage system. From that order this appeal is prosecuted.

Our first drainage statute was enacted in 1905. (Chap. 106, Laws 1905.) It was amended in 1909 (Chap. 144, Laws 1909), and the amended Act was superseded by a new Act in 1915 (Chap. 147, Laws 1915). The Act of 1915 was superseded by Chapter 129, Laws of 1921, which is our present statute, comprised in sections 7265–7364, Revised Codes of 1921. In very brief outline the statute provides for the following procedure: A petition complying with the requirements of section 7265 must be filed in the district court of the county where the lands to be drained, or some of them, are situated. An order fixing the time for hearing must be made and notice given as prescribed by section 7268. If service of the notice is not complete at the time designated, an adjournment may be taken (7272), and further notice of the adjourned hearing given (7273). Any interested person may contest the application (7275), and upon the hearing the court must determine the sufficiency of the petition and all questions raised by the contest, and shall dismiss (7279) or approve the petition. If the petition is approved, the court

shall appoint three commissioners (7280) who shall take the oath and give the bond required by section 7281 and organize as required by section 7291. Thereafter, as soon as may be, the commissioners shall file a preliminary report and notice of the hearing thereon must be given (7293). Any interested person may present a remonstrance against the report (7295), and the issues thus raised shall be determined by the court without a jury (7297). For any of the reasons stated in section 7297 the court may dismiss the petition. However, if the court finds that the benefits will exceed the damages and costs, and that the public health or public welfare will be promoted by the proposed work, the report shall be confirmed and the commissioners directed to proceed (7298). After this report is confirmed, the commissioners shall cause surveys to be made and maps, plans and specifications to be prepared, and shall ascertain and report to the court the various matters and things enumerated in sections 7304–7317, which shall include a statement of the special benefits accruing to or damages suffered by any lands and an apportionment of the cost to the lands according to benefit received. Notice of the time and place for hearing this report must be given (7316), and upon the hearing the court may enter an order confirming the report, and thereupon "the proposed work shall be established and authorized and the proposed assessments approved" (7319). If the original assessments are insufficient, additional assessments may be made after notice and a hearing (7338). After the work is completed, the commissioners shall annually report to the court (7327), and before the report is approved notice must be given and a hearing had (7328). An opportunity is afforded to any land owner to present the claim that his lands are exempt from liability for the assessments, either original or additional (7340–7342). Section 7347 provides that the damages awarded to any land owner must be paid or tendered before the commissioners may go upon his land to prosecute the work, but this shall not prevent them going upon the land to do the preliminary work necessary to an assessment of benefits or an award of damages.

Provision is made for bringing in other lands which receive benefits, but only after notice and a hearing (7349–7353). If additional lands are brought in, the commissioners shall assess against them "such sum as shall be just" and report their findnigs to the court (7354), which shall order a hearing after notice. Upon this hearing, if a jury is demanded, the court shall frame issues "on benefits and damages," and shall submit such issues to a jury (7355), and upon the findings shall confirm the report. An appeal may be taken to the supreme court from the order confirming the preliminary report of the commissioners (7299), from the order confirming the report making the assessment and awarding damages (7319), and from the order bringing into the district additional lands (7352). Section 7280 declares that "ownership of land within the district shall not disqualify a person from acting as a commissioner." The other provisions of the statute need not be reviewed.

Drainage statutes similar to ours and differing from it only in minor matters of procedure have been enacted in many states, and, speaking generally, have withstood every attack aimed at their constitutionality; at least, every objection urged against our Act has been considered and overruled in numerous instances. So often and so thoroughly has the subject been treated that it would be an idle ceremony for this court to restate the reasons which underlie the decided cases, and we content ourselves with the bare statement of the conclusion upon each objection and with a citation of some of the leading authorities which sustain it.

1. That lands may be brought into a drainage district and [1] subjected to the imposition of special assessments to defray the cost of constructing and maintaining the drainage system upon the theory that the use to which the lands are subjected is a public use, is not open to further discussion in this state. (*Billings Sugar Co.* v. *Fish,* 40 Mont. 256, 20 Ann. Cas. 264, 26 L. R. A. (n. s.) 973, 106 Pac. 565.)

2. In subjecting privately owned lands to this public use the state acts in virtue of its power of eminent domain. (*Summers* v. *Sullivan*, 39 Mont. 42, 101 Pac. 166.)

3. So long as ample provision is made for notice to every [2] interested land owner and an opportunity for him to be heard before he may be affected adversely, it cannot be said that the statute operates to deprive him of his property without due process of law. (*Mound City Land & Stock Co.* v. *Miller*, 170 Mo. 240, 94 Am. St. Rep. 727, 60 L. R. A. 190, 70 S. W. 721; 9 R. C. L. 643.)

4. The fact that this statute authorizes the commissioners [3] to go upon a land owner's property for the purpose of necessary investigation to determine the special benefits received or damages suffered by it in advance of an award does not render it obnoxious to the provision of the Constitution which declares that private property shall not be taken or damaged for public use without just compensation having been first made to or paid into court for the owner. (*St. Louis M. & M. Co.* v. *Montana Co.*, 9 Mont. 288, 23 Pac. 510; affirmed, 152 U. S. 160, 38 L. Ed. 398, 14 Sup. Ct. Rep. 506 [see, also, Rose's U. S. Notes].)

5. Objection is made: (a) That the statute denies to one originally in the district the right of jury trial upon the question of benefits received or damages suffered by his land; and (b) that it discriminates in favor of the land owner whose property is brought into the district after it is organized by extending to him the right to have the question of benefits or damages determined by a jury.

(a) The proceeding by which a drain district is created [4] and managed is purely statutory. It is not an ordinary civil action, but a special proceeding (*Matter of Ryers*, 72 N. Y. 1, 28 Am. Rep. 88), in which the right to a jury trial did not exist at the time our Constitution was adopted (*Portneuf Irr. Co.* v. *Budge*, 16 Idaho, 116, 18 Ann. Cas. 674, 100 Pac. 1046). Hence the right of trial by jury as guaranteed by the Constitution is not impaired. (*Cunningham* v.

*Northwestern Improvement Co.,* 44 Mont. 180, 119 Pac. 554.)
The general rule is stated in 10 R. C. L. 187, as follows: "Trial
by jury in eminent domain proceedings is not essential to due
process of law, and a state may authorize any just and rea-
sonable method of determining the amount of compensation
for land taken for the public use without violating the Four-
teenth Amendment of the similar provisions of the state con-
stitutions."

(b) The statute does not deny to the land owners whose
[5] properties are included in the district originally the
equal protection of the law. The rule that general laws shall
operate uniformly does not prohibit a reasonable classifica-
tion of subjects. The situation of the land owner whose prop-
erty is originally in the district in so far different from that
of the land owner whose property is brought in after the
district is created as to furnish the basis for a reasonable
classification; hence the statute is not open to this objection.
(*In re Organization of Bench Canal Drainage Dist.,* 24 Wyo.
143, 156 Pac. 610.)

6. The statute does not attempt to delegate legislative power
[6] to the judiciary, and hence does not impinge upon the
provisions of section 1, Article IV, of our Constitution.
(*Barnes* v. *Minor,* 80 Neb. 189, 144 N. W. 146; *State ex rel.
Matson* v. *Superior Court,* 42 Wash. 491, 85 Pac. 264.)

7. Appellant contends that the provision of section 7280,
[7] above, that "ownership of land within the district shall
not disqualify a person from acting as a commissioner," is
violative of that fundamental maxim of our law that no
man shall be the judge of his own cause, and support for
this contention is found in *Commissioners of Union District
No. 1* v. *Smith,* 233 Ill. 417, 84 N. E. 376, but the decision
is contrary to the overwhelming weight of authority as dis-
closed by the notes to the same case as reported in 16 L. R. A.
(n. s.) 292.

The reason for our conclusion that the statute is not open
to this objection is made manifest by the statute itself, which

requires the assessment of benefits and damages to be reviewed by the court after notice to all interested and a hearing in which the assessments may be altered. In other words, the commissioners act only in an advisory capacity. Their decision is not final. The general rule is stated in 19 C. J. 626, as follows: "Drainage commissioners are not disqualified by the mere fact of their ownership of lands lying in the drainage district." (See, also, note, 2 A. L. R. 1207; *Hibben* v. *Smith,* 191 U. S. 310, 48 L. Ed. 195, 24 Sup. Ct. Rep. 88 [see, also, Rose's U. S. Notes].)

8. The contention that the interested land owners should [8] have the right to select the commissioners is without merit. In the absence of any constitutional restriction the legislature may designate the officers who shall construct the drains and supervise the work of the district and may provide the method for their selection. Drain commissioners are not constitutional officers, but mere agents of the state. (*State ex rel. Brooke* v. *Nyssa-Arcadia Drainage Dist.,* 80 Or. 524, 157 Pac. 804; 19 C. J. 625.)

9. Finally, it is contended that the statute authorizes the [9] imposition of taxes not uniform upon the same class of subjects and therein violates section 11, Article XII, of our state Constitution. Special assessments for the construction and maintenance of drainage works, though imposed and collected in virtue of the taxing power, are not taxes within the meaning of that term as employed in Article XII, above (*Billings Sugar Co.* v. *Fish,* above); hence the requirement that taxes must be uniform has no application here (*Jones* v. *Drainage Dist.,* 102 Miss. 796, 59 South. 921; *Drainage Dist.* v. *Turney,* 235 Mo. 80, 138 S. W. 12; 19 C. J. 714). We are of the opinion that our statute is not open to any of the objections urged against it.

In addition to the foregoing, counsel for appellant contend [10] that the district was not created properly in that notice of the postponed meeting of September 19 was not served as required by law, but there are not any defects

in the service pointed out either in the remonstrance or in appellant's brief. The service appears to have been made properly (sec. 7273), and the bill of exceptions prepared by appellant recites: "And thereafter and in the manner and within the time prescribed by law the said notice was published, mailed, posted, and served upon the land owners, and proof of such publication, mailing, posting, and service has been filed in the office of the said clerk of court." In view of the record this objection does not merit serious consideration.

Again, it is contended that the court did not pass upon all of the objections raised by the remonstrance, but again the record contradicts the contention. The court found "that the remonstrance filed by the said J. W. Johnston is without merit," but even that finding was unnecessary. The order confirming the report as made operates *ipso facto* to overrule every objection urged in the remonstrance.

The order is affirmed.

*Affirmed.*

Associate Justices Farr, Cooper and Galen concur.